H. D. WILLIAMS COOPERAGE COMPANY *v.* KITTRELL.

## Opinion delivered March 10, 1913.

1. MASTER AND SERVANT—INJURY TO SERVANT—PROXIMATE CAUSE.— Where plaintiff undertook to remove an accumulation of dust and shavings from beneath a planer, and in so doing, his hand was cut off by the underknives, and plaintiff claimed defendant was negligent in that the hood was too large and the machine improperly speeded, but his own testimony showed that some accumulations of dust and shavings always had to be removed by hand and would have to be so removed, even if the hood were smaller and the machine properly speeded; *held*, that the facts that the machine was improperly speeded and the hood was too large were not the proximate cause of the accident.    (Page 343.)

2. MASTER AND SERVANT—INJURY TO SERVANT—DUTY TO WARN—NEGLIGENCE.—Where the plaintiff is twenty-three years of age, and a man of average intelligence, and had worked about a planer for some time, and while removing an accumulation of dust and shavings from the hood of the planer, had his hand cut off by the underknives, and it appears that he knew there was a lever by the use of which he could have stopped the machine while cleaning it, but he did not do so, defendant will not be liable for failing to warn him of the danger of his position, nor the danger attending his failure to stop the machine while cleaning the hood.    (Page 344.)

3. MASTER AND SERVANT—DUTY TO WARN—INJURY TO SERVANT.—When a servant is an adult of normal intelligence and reasonable experience in the work in which he is engaged, the defendant's duty is measured by the duty which a master ordinarily owes to a servant of mature years and average intelligence, and an instruction is erroneous which submits defendant's duty to warn on account of plaintiff's youth and inexperience.    (Page 345.)

4. MASTER AND SERVANT—INJURY TO SERVANT—HIDDEN DANGER—DUTY TO WARN.—When plaintiff is an adult of normal intelligence and experience in the work in which he is engaged, and is injured by his hand coming in contact with the revolving knives of a planer, while cleaning the same, and it appears the machine could have

been easily stopped by him by moving a lever, testimony of plaintiff that he thought the knives were guarded, and that he did not know how far the knives were from the outside edge of the hood, will not support a conclusion that the danger was hidden or extraordinary, so as to raise a duty upon the master to warn. (Page 348.)

Appeal from Cleburne Circuit Court; *George W. Reed,* Judge; reversed and dismissed.

*J. H. Harrod, Mills & Barr* and *T. D. Wynne,* for appellant.

The court erred in the admission of testimony; also in its charge to the jury. 93 Ark. 153. The evidence did not warrant a verdict. 90 Ark. 407. An employer of mature years and experience needs no warning of obvious dangers as they are among the ordinary risks he assumes. Cases *supra.*

*E. G. Mitchell,* for appellee.

1. A verdict on conflicting evidence will not be disturbed. 23 Ark. 50; 18 S. W. 172; 157 Fed. 656. The verdict is conclusive. 17 Ark. 478; 11 S. W. 518; 19 Ark. 117; 51 *Id.* 495; 55 *Id.* 31; 90 *Id.* 23.

2. There is no error in the court's charge. 81 Ark. 249. Plaintiff was inexperienced and should have been warned. 53 Ark. 117; 71 *Id.* 56; 73 *Id.* 49; 81 *Id.* 249; 99 Ark. 377; 93 *Id.* 153; 90 *Id.* 407; 97 *Id.* 188; 84 *Id.* 382.

McCULLOCH, C. J. The plaintiff, H. H. Kittrell, received personal injuries while working in the service of the defendant, H. D. Williams Cooperage Company, and this is an action instituted by him to recover damages on account of such injuries.

Defendant was operating a stave and heading mill at Leslie, Arkansas, and plaintiff was working at a double-surface planing machine called a "pin-head planer." There were two sets of revolving knives in the machine, one above and one below, through which heading timber was run in order to be planed on both sides. Plaintiff was working behind the machine for the purpose of taking the planed pieces of timber as they came

from the planer. The upper set of knives was exposed to view, but the lower set was obscured by a metal hood placed there for the purpose of catching the dust and shavings which came from the knives. A pipe ran from this hood and was connected to a fan so as to convey the dust and shavings from the hood through the pipe by suction. There was always some accumulation of dust and shavings in the hood, which had to be taken out of the hood by the hands of the operator. The evidence tends to show that on the occasion in question the hood was too large and on that account, as well as on account of the excessive velocity of the machine, the suction was not strong enough to draw the dust and shavings out of the hood. For that reason it choked up and had to be cleaned out oftener than would have been necessary if the appliances had been in better working order. It was plaintiff's duty to clean out the hood when it became choked up, and he received his injury in attempting to perform that work. While the machine was in motion he inserted his hand, and it came in contact with the lower set of knives, which cut his hand off entirely.

He recovered judgment below for damages in the sum of $2,999.99, and the defendant appealed.

Negligence of the defendant is charged in allowing the machinery to get into defective condition, in that it was improperly speeded and that the hood was too large so that the conveyor pipe would not perform its function of carrying off the dust and shavings; also in failing to give the plaintiff warning of the danger attending the discharge of his duty of cleaning out the pipe.

According to the undisputed evidence in the case there was always some accumulation of dust and shavings which had to be removed by hand. The plaintiff's own testimony establishes that fact, and neither the alleged defect in the hood as to size nor the failure to have the machine properly speeded was the proximate cause of the injury, for, in any event, the plaintiff would have had to perform that service at times, and the fact that the defective condition aforesaid caused a more frequent

accumulation does not make those defects the proximate cause of the injury.

The court erred, therefore, in submitting those questions to the jury as matters of culpable negligence upon which liability of the defendant might be predicated, and for this reason, if for no other, the judgment must be reversed.

Error was also committed in giving the instruction submitting the question of negligence on the part of defendant in failing to establish and enforce regulations for the operation of the mill and protection of employees.

We are of the opinion, moreover, that the evidence does not make a case for submission to the jury of the question of the negligence of the defendant in failing to give plaintiff instruction as to the discharge of his duty and warning as to the danger which attended the same. The plaintiff was, at the time of his injury, twenty-three years of age, and of average intelligence. There is no showing whatever in the record that he lacked anything in intelligence, but, on the contrary, an examination of his testimony shows that he was of average intelligence and fully understood the work in which he was engaged. He had worked at this mill something more than a year, first working there for a period of about ten months something like two years before the injury, and later he returned to the work after being absent for a time and worked about two and one-half months immediately prior to the injury. He had worked at several different kinds of planing machines in the mill, but had only worked at this particular machine for about six days preceding his injury. He had previously worked at a single-surface planer, but not at a double-surface planer. It was a quite common occurrence for a man at this machine to clean out the accumulation of dust and shavings. Plaintiff himself had been doing this several times a day during the six days that he had been working at the machines. He had seen others do the same thing. Within about six feet of the place where he was standing at the machine there was a lever by which a belt

could be shifted so as to stop the machine, and frequently it was stopped in order to clean it out. The testimony of plaintiff establishes the fact that sometimes the man who cleaned it out would stop the machine and sometimes he would clean it out without stopping. The plaintiff knew that the lever was there and what it was for, and it was his option either to stop the machine while he was cleaning it out, or not do so. The failure to do so was his own election, as he received no instructions not to do so, but was left to do it according to his own notion of safety.

The court gave instructions to the jury submitting to them the duty of warning which defendant owed to the plaintiff if the latter was found, on account of youth and inexperience, not to know of or appreciate the danger incident to work about the machine. Those instructions were erroneous, for, as we have already seen, the plaintiff was an adult of normal intelligence and reasonable experience in the work in which he was engaged. The duty of the defendant must, therefore, be measured by that which a master ordinarily owes to a servant of mature years and average intelligence, and it constituted prejudicial error to submit the case to the jury on any other theory. *Railway Co.* v. *Torry,* 58 Ark. 217.

In the case of *Louisiana & Arkansas Ry. Co.* v. *Miles,* 82 Ark. 534, after quoting from former cases the rule of law that it is the duty of the master to warn the servant of danger incident to the service where, by reason of youth and inexperience, the servant does not realize or appreciate such danger, we said:

"Herein lies the distinction between the duty of a master towards a servant of immature age and inexperience, and his duty towards a servant of full age and average intelligence. In case of the former it is the duty of the master to instruct as to patent as well as latent defects if, by reason of the youth and inexperience, the servant does not know or appreciate the danger incident to his employment, and if the master knows or ought to know or take notice of his youth and inexperience. But

in the case of a servant of full age and normal intelligence the master does not owe a duty to instruct or warn as to dangers which are open and obvious to the senses of any man of ordinary intelligence    *    *    *
Where the danger is one that has not been created by a negligent act of the master, and is one which is an ordinary incident to the service, the servant is presumed capable of taking notice of it without warning or instruction from the master, unless on account of youth and inexperience there is reason to believe that he does not know of and appreciate the danger.'' See also *Warren Vehicle Co.* v. *Siggs,* 91 Ark. 102; *C. R. I. & P. Ry. Co.* v. *Grubbs,* 97 Ark. 486.

In the present case the danger was not created by any negligent act of the master, and the servant was not an inexperienced youth, and therefore the rule just announced applies. In discussing this subject Mr. Labatt says:

''The master is not required to point out dangers which are readily ascertainable by the servant himself if he makes an ordinarily careful use of such knowledge, experience and judgment as he possesses. The failure to give such instructions, therefore, is not culpable where the servant might, by the exercise of ordinary care and attention, have known of the danger, or, as the rule is also expressed, where he had all the means necessary for ascertaining the conditions, and there was no concealed danger which could not be discovered.'' 1 Labatt on Master & Servant, § 238.

Numerous cases cited in the opinion in the case of *Louisiana & Arkansas Ry. Co.* v. *Miles, supra,* fully sustain this view and illustrate the different applications which have been made of it.

The only question which remains for our determination is, whether or not it should be said as a matter of law that the danger incident to the performance of the work of removing from the machine by hand accumulated dust and shavings was a latent or extraordinary

one of which it was the duty of the master to give warning.

Plaintiff's regular work was to assist in the operation of the machine. He not only took the timbers as they came from the machine, but he had, prior to that time, fed the machine and knew exactly how it was operated. He knew that the revolving knives were there, the lower ones as well as the upper, though the latter were not exposed to view. He knew that the machine could be easily stopped for the purpose of removing the accumulation of dust and shavings, and had frequently seen that done. The only excuse he gives in his testimony for allowing his hand to come in contact with the knives was that he thought the knives were guarded, and also that he did not know how far the knives were from the outside edge of the hood. But this does not, we think, remove the case from the operation of the rule announced by Mr. Labatt that "the master is not required to point out dangers which are readily ascertainable by the servant himself if he makes an ordinarily careful use of such knowledge, experience and judgment as he possesses" and "where he had all the means necessary for ascertaining the conditions, and there was no concealed danger which could not be discovered."

There was no deceptive condition created, nor was there any negligence on the part of the defendant in creating a situation increasing the danger incident to the work to be performed by the plaintiff. There was no reason upon which to found a belief that the knives were guarded inside the hood, and even though plaintiff did not know how far the knives were from the edge of the hood it was his duty to examine and determine for himself the situation of the knives before he inserted his hand. It was not to be reasonably anticipated that a man of full age and normal intelligence would insert his hand into a place of that kind without ascertaining the exact location of the knives. Besides, as we have already seen, the plaintiff knew that the machine could easily be stopped while it was being cleaned and that there was

a lever there for that purpose. This was enough to put him upon guard that there was some necessity for stopping the machine instead of attempting to clean it out while running.

The case of *Gleason* v. *Smith,* 172 Mass. 50, is not only similar on the facts but states the principle which should control in this case. The plaintiff in that case was a person of mature years and experience, he was employed to work upon a molding machine, and was injured by having his hand come in contact with revolving knives on the machine. There was a guard in front of the knives narrower than the one which had previously been used and did not fully cover the knives, and the charge of negligence on the part of the employer was that the servant was set to work upon a dangerous machine without warning him of the danger. The court, in disposing of the case, said:

"Although the plaintiff could not see the knives when the machine was in operation there is nothing of record that an examination of the machine when it was at rest would not have shown that the guard did not fully cover the knives. If the plaintiff had chosen to use them, he evidently had all the means of seeing the relation of the guard to the knives which the workmen had who made the guard. If he put his thumb and fingers against the knife without making an examination, and defendant had no reason to suppose that he needed instruction with regard to this danger and owed him no duty either to change the guard or give him instruction or warning about it."

Our conclusion is, that the defendant did not owe the plaintiff any duty to give him further instructions as to the condition of this machine and the danger of doing this work; that plaintiff's injury was not the result of any negligence on the part of the defendant in failing to give him instructions, but that the injury resulted from a danger which was incident to the work in which he was engaged and the burden of which, under the law, he must himself bear.

The case is fully developed and according to plaintiff's own testimony he is not entitled to recover anything. No useful purpose would be served in remanding the cause, so the judgment is reversed and the cause dismissed.