McDONALD v. HEILBRON-PALMER TANK LINE COMPANY.

Opinion delivered March 14, 1927.

MASTER AND SERVANT—NEGLIGENCE IN FURNISHING A SAFE PLACE—JURY QUESTIONS.—Where an employee helping to pull a flywheel of a gasoline engine down to start the engine was hurt by his foot slipping off the sill on which he was standing and into the flywheel, and there was evidence that, without plaintiff's knowledge, the foundation of the engine was insecure, causing excessive jerking and vibration, the questions of the employer's negligence and of the employee's negligence and assumption of risk were for the jury.

Appeal from Union Circuit Court, Second Division; *W. A. Speer,* Judge; reversed.

*Hutchins, Abbott, Allday & Murphy,* for appellant.
*T. D. Wynne* and *Chas. A. Miller,* for appellee.

SMITH, J. Appellant, who was the plaintiff below, alleged as his cause of action against appellee the following facts: That he was employed by appellee as a common laborer to assist in drilling an oil well. He had never seen the machinery with which the well was being drilled until a few minutes before his injury. He further alleged: "That he knew nothing from experience or previous observation about the condition of the machinery and equipment on said well; that, in fact, he had never seen the machinery on said lease until the day that the injury as hereinafter set out occurred; that, when he arrived at said well, under the direction of the

foreman for the defendant company, he, together with the other employees and in their presence, under the direction and supervision of the said foreman, set about the task of starting the engine on said well; that the particular job of starting the engine is known in oil vernacular as 'kicking off' the engine; that the foreman took his place at the engine itself and one of the employees got on one side of the wheel and this plaintiff on the other, to assist in turning the wheel over, in order to make the engine spark so that the same would ignite the flow of gas and thereby cause the engine to run. Plaintiff states that the work was being done under the personal supervision and direction of the foreman of the defendant company; that this plaintiff was standing on a sill which was adjacent to the wheel of the engine, which position was necessary for this plaintiff to take in order to perform the duties required of him at that time and place; that the sill was covered with oil; the said sill is a heavy piece of timber approximately twelve inches in width, and composes a portion of the foundation of the engine located on said well; that across the said sill, about the center, was a steel or wire cable, which was practically touching the sill at the point where this plaintiff was standing and where it was necessary for him to stand in order to perform the work required of him at the time and place; that the said cable, this plaintiff afterwards learned, was placed there for the purpose of making stationary and stable the engine and its foundation, and was tied around the foundation of the engine and to the brace of the engine in the opposite direction from the point at which it encompassed the foundation of the engine. This plaintiff ascertained, after the injury hereinafter described, that the brace was necessary for the reason that the engine was not securely bolted and fastened to its foundation; that six bolts and taps were necessary to firmly attach the engine to the foundation, and that only two of the bolts were there, and only one of them had a tap on it; that, in addition to that, the brace which was supposed to support the engine and lend

stability to the engine was wholly out of repair, and, in fact, at the point where the brace entered the ground, had rotted out. The result of the failure to securely attach the engine to its moorings, and the failure to have braces sufficient to hold the moorings of the engine solid in their place, was that the engine, when it was running, violently shook on its. foundation, a portion of which was the sill above described, upon which this plaintiff was standing at the time and place when he was injured as hereinafter set out. That, in addition to that, the wholly unsafe condition in which the said engine was set up caused the engine, when it was running, to shake and quiver the cable on the sill above described upon which this plaintiff was standing. That these facts were unknown to the plaintiff at the time of the injury hereinafter described, and such facts could not have been ascertained by the plaintiff; that the conduct of the engine could not have been ascertained in any manner except by observation of it and experience with it, neither of which this plaintiff had any knowledge of, and the defects of the engine above set out and the other serious defects of the engine were not then at all apparent to this plaintiff, nor were they patent or open or visible."

The complaint further alleged that, "at the time and place above set out, the persons hereinbefore referred to, under the direction of the foreman of this defendant company, proceeded to start the engine by causing the same to ignite as above described; that, in turning the wheel, the engine ignited and the wheel began to revolve; that, as a result of the ignition and the starting of the engine, the engine violently shook on its foundation and shook the foundation and the cable in such a manner and with such violence as displaced this plaintiff from the firm foothold secured by him for the purpose of performing the duties required of him by his foreman. In other words, the violence of the jar of the engine and its foundation and the cable above described and the shaking of the sill upon which this plaintiff was standing caused this plaintiff to slip, lose control of himself, and

to be hurlea against the framework of the machinery and his leg thrown into the spokes of the revolving wheel of the machinery; that, as a result of the hurling of this plaintiff into the framework and his leg into the revolving wheel, one of his legs was crushed and broken. That said engine was not in any sense safe machinery, was not in any sense attached in the manner and form required by good and careful workmanship, and the machinery and brace with it on which this plaintiff was required to work was wholly unsafe, and was known by the defendant company to be in the condition hereinabove described."

Plaintiff offered testimony tending to sustain all these allegations.

The engine in question was a four-cycle gasoline engine, and had connected with it two large flywheels located on each end of the engine shaft. These flywheels were 5 or 5½ feet in diameter, and were separated by a space of 4 or 4½ feet. The shaft in its boxes rested on the sills and the foundation in question. Three men were assisting plaintiff in starting the engine, and the testimony shows that these men, including the plaintiff, selected their positions at said engine of their own choice or volition. The plaintiff got in between the flywheels, and was standing on the sill of the engine, engaged, at the time of the accident, in pulling down upon one of the flywheels thereof. One or two efforts had been made to get a shot without success. Another effort was made in the same manner, when the plaintiff's foot slipped off of the sill into the flywheel, when and where his leg was broken.

Upon his cross-examination, in detailing the exact manner in which he was injured, the plaintiff testified as follows: "I had about six and-a-half inches, I guess; I got my foot on that side of the cable (indicating) and when I pulled down I never noticed where my foot was. I never put my foot on the spoke; I just pulled down. The other men was kicking, and I pulled hard—I always try to do my part—and when the engine made a good

kick, when it made a full shot, my foot slipped off, and the next I knew they were taking me out of the fly-wheel.''

At the conclusion of the introduction of the testimony in plaintiff's behalf the court directed the jury to return a verdict for the defendant, which was done, and judgment was rendered accordingly, from which is this appeal.

In support of the action of the court in directing a verdict, appellee insists that·appellant's own testimony shows that the injury to him was not caused by any negligence on the part of appellee, and that the injury was a mere accident for which it is not responsible.

It is insisted that the instant case is governed by the opinion of this court in the case of *Hunt* v. *Dell,* 147 Ark. 95, 226 S. W. 1055. There are points of similarity in the two cases. But, in the case cited, the only defect in the engine which was alleged to constitute negligence on the part of the master was the absence of a compressed air starter; but it was said that, if the absence of a starter was a defect in the machinery, it was patent to any one of reasonable intelligence exercising ordinary care for his own safety, and that the danger in going between the fly-wheels to assist in turning them so as to crank the engine was likewise obvious to such an employee. We held, under those facts, that the law attributed to the employee knowledge and appreciation of the danger incident to the work in which he was engaged, and exempted the employer from any liability to him on account of the injury received under the circumstances stated.

In the instant case there were, in the opinion of the majority, dangers which were not patent and obvious and of which the plaintiff was not advised or warned. These dangers arose out of the insecure foundation on which the engine was placed and the insecure manner in which the engine was fastened to its foundation, thus causing a greater jerking and vibration than would have otherwise occurred. The majority are also of the opinion that the jury might have found, from the testimony

quoted, that the excessive jerking and vibration of the engine caused plaintiff's foot to slip when it might not otherwise have done so, and thus have found that the plaintiff's injury was caused, not by his own negligence or by accident, but as the result of the defects and dangers arising out of the insecure fastening of the engine, of which plaintiff was not advised and the risk of which he did not assume, as they were not open and obvious, as was the case in *Hunt* v. *Dell, supra.*

For these reasons the majority are of opinion that the court erred in directing a verdict in defendant's favor, and the cause will therefore be remanded, with directions to submit to the jury the question of appellee's negligence, and also the questions of assumption of risk and contributory negligence on the part of the plaintiff.